OPINION OF THE COURT
John F. Lawton, J.
Two orders to show cause have been brought before the court on March 16, 1983 with regard to the seizure and ownership of certain property by the Utica City Marshal on March 2, 1983. The order to show cause by defendant Raymond Seakan (Seakan), and as alleged at oral argument by Seakan on behalf of Lone Star Marketing and Specialty Company, Inc. (Lone Star), requests an order of the court vacating the purported property execution and levy upon the appliances and chattels received from the premises of Every Brand Appliance and Furniture Company, Inc. (Every Brand) by the Utica City Marshal on *682 March 2, 1983 and releasing said property from the custody of the Utica City Marshal to Lone Star. Further, this order to show cause requests the court to deny the relief requested by petitioner Michael Yeh, doing business as Coaster Company of America (Yeh).
The order to show cause and petition by judgment creditor Yeh requests that the court direct a hearing pursuant to CPLR 5239 and 5225 (subd [b]) with regard to the ownership and the claims being asserted against the aforesaid property presently being held by the Utica City Marshal.
The facts in this matter are that on May 12, 1982, Yeh obtained a judgment in an action in Oneida County, Supreme Court for $10,734.60 against Raymond Seakan, Raymond Seakan Enterprises, Inc., and Lollipop Candy Factory, Inc. As of the date of this motion, this judgment remains unsatisfied. On March 2, 1983 the Utica City Marshal entered onto the premises located at 801 Wager Street, Utica, New York, and removed numerous chattels and appliances therefrom. The defendant Raymond Seakan was on the premises at said time and when said property was seized, was served by the Utica City Marshal with an income execution dated July 12, 1982. Mr. Seakan’s affidavit further provides that he has never been served with a property execution by the enforcement officer of any court. Thereafter, this property was taken and is presently being stored at Eagle Express, Inc.’s warehouse located at 2165 Whitesboro Street in the City of Utica. On March 3, 1983 the petitioner delivered its property execution to the Utica City Marshal against Raymond Seakan, et al., as judgment debtors with regard to the property removed from 801 Wager Street on March 2, 1983. The critical contested fact in these pleadings is the question of who owns the property seized on March 2, 1983. The defendant Raymond Seakan indicates in his affidavit that he is the general manager of Lone Star and that the property seized on March 2, 1983 is solely owned by Lone Star.
Petitioner alternatively alleges that the property seized is the property of the judgment debtor Seakan and that the corporation known as Lone Star Marketing and Specialty Company, Inc., is only a sham corporation.
*683 In addition to contesting the ownership of this property, the defendant Seakan, and allegedly on behalf of Lone Star, asserts that this seizure should be voided for failure to comply with numerous provisions of CPLR article 52. The court, upon a review of the facts and applicable statutes in this matter, must agree with this contention. The Utica City Marshal on March 2,1983 seized property based on the service of an income execution (CPLR 5231). Unquestionably, under article 52 property cannot be seized under an income execution, but rather a levy upon personal property must be made pursuant to CPLR 5232. Further, there was no service of a property levy upon the garnishee at the time of seizure of this property, as required by CPLR 5232. Petitioner’s advising the court that the Utica City Marshal may have had a property execution in its possession at the time of the seizure does not overcome the failure of the marshal to comply with the requirements in this section. Further, the court notes that the amount of the alleged property execution in possession of the Utica City Marshal was for $285, wherein as indicated by petitioner, the property seized had a value of approximately $12,000. Under CPLR 5232 the Sheriff or enforcement officer may only seize sufficient property which would be reasonably valued to satisfy the judgment. Seizing $12,000 worth of property to satisfy a $285 judgment is beyond the bounds of reasonable seizure. From the above, it is clear that the seizure of property from 801 Wager Street on March 2, 1983 was invalid.
Though the March 2, 1983 seizure was invalid, a question yet remains as to the effect of the subsequent March 3, 1983 property execution served by petitioner with regards to its Supreme Court judgment. Defendant again contends that this execution was procedurally improper since it was made by the Utica City Marshal rather than the Sheriff.
Pursuant to CPLR 5232 (subd [b]), a levy by service of execution or seizure must be by the Sheriff or a court enforcement officer. Therefore, it may not be contended nor does the court believe it is being contended by petitioner that the service of the Supreme Court judgment property execution by petitioner’s attorney accomplished a levy by service or seizure. Thus, the remaining question is whether *684 the Utica City Marshal, upon receipt of this Supreme Court judgment property execution, may levy by seizure or by service of execution upon personal property. The Sheriff is the sole enforcement officer mentioned in CPLR article 52. Though the authority is sparse as to this issue, it appears to this court that only its Sheriff may enforce a Supreme Court judgment and the enforcement powers of the Utica City Marshal are limited to enforcing certain judgments of the Utica City Court. UCCA 105 (subd [b]) provides in part: “(b) Enforcement officers; police officers. The enforcement officers of the court shall perform the same duties as are performed by sheriffs in courts of record and shall have, within their territorial jurisdiction and subject to any limitations imposed by this act or by other provision of law, such power to serve and execute the processes and mandates of the court as a sheriff has with regard to the processes and mandates of the supreme court.” The process and mandates pursuant to said section which the Utica City Marshal may execute would be only those of the Utica City Court. This position is further bolstered by the case of First Westchester Nat. Bank of New Rochelle v Lewis (42 Misc 2d 1007, 1008-1009) when it states that: “Prior to issuance of a transcript by a lower court, enforcement by execution is carried out by the lower court’s own enforcement officer, and is governed by the court’s practice act”. Upon issuance of the transcript as contemplated in the First Westchester Nat. Bank case the judgment of a lower court is converted into the equivalent of a Supreme Court judgment per CPLR 5018 (subd [a]) and would no longer be enforceable by the lower court’s enforcement officer, but rather only by the Sheriff. Further, the commentary to CPLR 5230 is seen to support this conclusion: “Execution on the judgments of Supreme or Family Court or of a county court may be directed to the sheriff of any county of the state. It is captioned out of the court in the county of the judgment’s rendition, however. Execution on the judgment of a lower court may be issued to the lower court’s own enforcement officer in the area serviced by the particular lower court”. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5230:5, p 336.) Therefore, the Utica City Marshal is without authority to levy pursuant to CPLR 5230 on a *685 property execution issuing from a Supreme Court judgment. Thus, both the March 2 and March 3, 1983 attempted levies were procedurally improper and defendant’s request that the property be released from the custody of the Utica City Marshal must be granted.
The court does agree with petitioner’s statement that delivery of a property execution to an enforcement officer when the officer is already in possession of property of the judgment debtor will constitute a valid levy. (Peck v Tiffany, 2 NY 451.) This proposition, though, does not change the court’s conclusion for the enforcement officer in this case was without authority to levy based on a Supreme Court judgment. Further, the court questions whether this principle applies in those situations where the underlying levy was improper. (See Matter of Feinsand, 238 App Div 863.)
Lastly, this court must review petitioner’s request for a hearing of its claim to this property under the provisions of CPLR 5239 and 5225 (subd [b]). In response to this demand the defendant Seakan and allegedly Lone Star assert that neither CPLR 5225 (subd [b]) nor 5239 are applicable to the facts presented to the court. Further, defendant contends that CPLR 5225 (subd [b]) is only applicable to situations wherein the judgment debtor has an interest in the property, which is not the case at bar. CPLR 5225 (subd lb]) authorizes a judgment creditor to commence a special proceeding against “a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to possession of such property or where the judgment creditor’s rights to the property are superior to those of the transferee”. In this case, the petitioner has commenced a special proceeding pursuant to this section against the Utica City Marshal who at the time of commencement of this proceeding had possession of this property. Further in the petition it is alleged that the judgment debtor Seakan has an interest in this property and in fact is the owner of this property. This petition was served against the respondent M. Frank Sack, as Utica City *686 Marshal, and also on Raymond Seakan, Every Brand Appliance Company, Inc., and Lone Star Marketing and Specialty Company, Inc. Therefore, all necessary parties have been duly served pursuant to CPLR 5225 (subd [b]) in this matter. This court’s determination that the property should be released to Lone Star in no manner terminates this special proceeding. This proceeding may continue against Lone Star as the company in possession or custody of the property that the judgment creditor alleges the judgment debtor has an interest. The court’s previous determination to release this property from the custody of the Utica City Marshal only amends the title of this petition to delete the present respondent set forth therein, and directs the substitution of Lone Star as the respondent.
Defendant’s objection that the judgment debtor has no interest in the property in question is without merit for it is this very question which is to be adjudicated in a hearing under CPLR 5225 (subd [b]). “Proceedings under CPLR 5225 (subd. [b]) and 5227 are plenary in that the court can adjudicate rights and interests in the debt or fund which is the subject matter of the proceeding.” (Matter of Ruvolo v Long Is. R.R. Co., 45 Misc 2d 136, 146.) Further, the language of CPLR 5225 (subd [b]) is no longer restricted as was the former applicable section of the Civil Practice Act to situations where there was no substantial disputes as to judgment debtor’s rights to the property in question. “The language in section 796 of the former Civil Practice Act preventing the issuance of an order directing delivery or payment of property or money unless the judgment debt- or’s Tight to the possession whereof is not substantially disputed,’ has not been carried forward by CPLR 5225(b). Thus, if the judgment debtor’s right to possession is disputed, the issue is to be determined in the special proceeding brought under CPLR 5225(b). Inasmuch as the judgment creditor and any adverse claimant may intervene in the special proceeding * * * the court is able to resolve factual disputes and adjudicate the rights of all interested parties.” (6 Weinstein-Korn-Miller, NY Civ Prac, par 5225:14; see, also, Matter of First Small Business Inv. Corp. v Zaretsky, 46 Misc 2d 328.)
Therefore, the petitioner has a right to commence and continue this special proceeding pursuant to CPLR 5225 *687 (subd [b]) and the request for a hearing as to the rights and interests of the judgment debtor, judgment creditor and garnishee as to the property in question is, therefore, granted.
Further, in reviewing the petition, it appears that petitioner alleges fraudulent activity among and between the defendant corporations and Lone Star. If this fraudulent activity includes improper transfer of assets, this issue may also be litigated in this special proceeding pursuant to CPLR 5225 (subd [b]). (Julien Studley, Inc. v Lefrak, 66 AD2d 208, affd 48 NY2d 954; Siemens & Halske GmbH, v Gres, 32 AD2d 624.)
In summation, the court finds that the purported executions of the Utica City Marshal on March 2, 1983 and March 3, 1983 were improper and, therefore, the property seized on March 2,1983 from 801 Wager Street in the City of Utica is hereby released to Lone Star Marketing and Specialty Company, Inc. Defendant’s motion to deny the relief requested in the petition and for the dismissal thereof is denied. The special proceeding commenced by petitioner is referred to Trial Term for a hearing to determine the rights, title and interest of the judgment debtor, judgment creditor and garnishee to the aforesaid seized property and the caption of the petition is to be amended to delete therefrom the present respondent and provide the respondent as being Lone Star Marketing and Specialty Company, Inc.